UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

REUBEN MILLER,                          :
                                        :
        Plaintiff,                      :
                                        :
v.                                      :        Case No. 3:13-cv-619 (VAB)
                                        :
CITY OF NEW LONDON, et al.              :
                                        :
        Defendants.                     :

RULING ON PLAINTIFF'S MOTION *IN LIMINE*

In his First Motion *in Limine* to Preclude Defendants' Expert Witness Testimony [Doc. No. 72], Plaintiff, Reuben Miller, moves to exclude the testimony of Defendants' proffered expert, Dr. Joel R. Milzoff.  For the following reasons, this Motion *in Limine* is granted in part and denied in part.

Dr. Milzoff is a toxicology consultant with a Ph.D. in Toxicology.  Def. Ex. B, at 2, 4. He has worked professionally in the field of toxicology since 1972, and has testified as an expert witness in numerous civil and criminal trials on interpretations of laboratory test results.  *Id. at* 1-3.  Defendants seek to have Dr. Milzoff provide expert testimony concerning Mr. Miller's intoxication level at the times relevant to this action, as well as the effects of Mr. Miller's intoxication level on his cognitive and motor functions.  Pl. Ex. A, at 1-2.

Dr. Milzoff's report concluded that "it does not appear that Mr. Miller demonstrated the clinical signs associated with blood alcohol concentrations ("BACs") greater than 0.25 gram percent, and indeed did not appear incapacitated.  The consumption of the significant amount alcohol [*sic*] consumed by Mr. Miller could have resulted in the altercation that resulted in Mr. Miller's arrest.  Additionally, the consumption of Klonopin, a drug prescribed for Mr. Miller,

1

along with the documented consumption of alcohol, could have played a significant role in the behavior of Mr. Miller."  Report of Dr. Milzoff, Pl. Ex. B, at 5.  Dr. Milzoff cited no specific bases for this opinion other than "the audio and video files" recorded of Mr. Miller, presumably during and after his arrest.

Plaintiff's objection to Dr. Milzoff's testimony is three-fold.  The first purported ground for exclusion is that the evidence would not be helpful to the jury because it is unrelated to the issue of whether Defendants' use of force was reasonable.  Second, Plaintiff challenges the methodology employed by Dr. Milzoff in arriving at his conclusions.  Finally, Plaintiff argues that, even were the evidence relevant, its probative value is substantially outweighed by the danger of unfair prejudice and confusion to the trier of fact.

### *Daubert* Standard

Federal Rule of Evidence 702 requires a district court judge to perform a critical "gatekeeping role" with respect to expert evidence, *i.e.*, to preliminarily assess the reliability and relevancy of the testimony before permitting the expert to testify in front of a jury.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

> A witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702.  In short, the expert's testimony must be relevant, reliable, and have a factual basis.  Furthermore, the Supreme Court has held that although "[t]rained experts commonly extrapolate from existing data," neither *Daubert* nor the Federal Rules of Evidence require "a district court to admit opinion evidence . . . connected to existing data only by the *ipse dixit* of

the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Significantly, the proponent of expert testimony bears "the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

## Relevance and Helpfulness

Rule 702 "requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue.  This condition goes primarily to relevance.  Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotation marks and citations omitted).  Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence in determining the action more probable or less probable than it would be without the evidence."  *See* Fed. R. Evid. 401.

The Supreme Court has held that the standard for determining whether excessive force was used in making an arrest is the Fourth Amendment "objective reasonableness" test, which "must be judged from the perspective of a reasonable officer on the scene" and take into account "the totality of the circumstances."  *Graham v. Connor*, 490 U.S. 386, 388, 396 (U.S. 1989). Federal courts have often admitted evidence of intoxication as relevant to making that determination.  *See*, *e.g.*, *Turner v. White*, 980 F.2d 1180, 1182-83 (8th Cir. 1992) (evidence of alcohol consumption ruled "relevant to the question of [arrestees'] actions and reactions when the [police] officers shouted at them"); *Saladino v. Winkler*, 609 F.2d 1211, 1214 (7th Cir. 1979) (evidence of plaintiff's intoxication "was relevant to the issue of the reasonableness of the plaintiff's conduct at [time of arrest]" and "tend[ed] to make it more probable that the plaintiff acted as the defendant contended he did or that plaintiff otherwise conducted himself in such a

manner as to place the defendant reasonably in fear of his life"); *Turner v. Cnty. of Kern*, No. 11-cv-1366, 2014 WL 560834, at *3 (E.D. Cal. Feb. 13, 2014) ("Evidence of intoxication would be relevant to explain [arrestee's] conduct (including any attempts to leave the scene) and, depending on exactly how much of [his] conduct is in dispute, to corroborate the [police] officers' version of events."); *Harris v. Clark*, No. 06-C-529, 2009 WL 1683233, at *2 (E.D. Wis. June 16, 2009) ("Whether plaintiff was under the influence of drugs or alcohol at that time is highly relevant to assessing the totality of the circumstances surrounding [a police officer's] use of force.  An intoxicated suspect might be more likely to use violence, and thus whether plaintiff was intoxicated is relevant to assessing [police officer's] claim that plaintiff tried to punch him."); *Hallett v. Richmond*, No. 05 C 50044, 2009 WL 5125628, at *3 (N.D. Ill. May 15, 2009) ("[T]he extent to which defendant was under the influence of drugs or alcohol at the time of the incident is relevant because his perception and recall of the events in question may have been adversely affected by the substances.  [] The evidence may also corroborate defendants' testimony that plaintiff was acting erratically or aggressively); *cf. Alvarado v. Oakland Cnty.*, 809 F. Supp. 2d 680, 684 (E.D. Mich. 2011) ("[E]vidence of Plaintiff's intoxication at the time of his encounter with [police officer], and specifically the level of his inebriation as determined by his blood alcohol level immediately following the incident, bears on the credibility of Plaintiff's recall of events that evening.").

While evidence of Mr. Miller's intoxication is relevant, Dr. Milzoff's testimony may not provide relevant evidence.  The Supreme Court requires proffered expert testimony to be helpful to the trier of fact in order to be admissible.  *See Daubert*, 509 U.S. at 591.  "[E]xpert testimony that seeks to address 'lay matters which [the] jury is capable of understanding and deciding without the expert's help' is not relevant and is therefore inadmissible[.]"  *United States v. Jiau*, 734 F.3d 147, 154 (2d Cir. 2013) (citation omitted) (alteration in original), *cert. denied*, 135 S.

Ct. 311 (2014); *see also United States v. Mulder*, 273 F.3d 91, 104 (2d Cir.2001) (a court should

not admit expert testimony "directed solely to lay matters which a jury is capable of

understanding and deciding without the expert's help") (internal quotation marks and citation

omitted).  The Rules of Evidence also allow this Court to "exclude relevant evidence if its

probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence."  Fed. R. Evid. 403.

Dr. Milzoff opined that Mr. Miller "did not appear incapacitated."  Report of Dr. Milzoff,

Pl. Ex. B, at 5.  This conclusion appears to be based on his viewing of video recordings of the

events surrounding Mr. Miller's arrest.  *Id.*  However, "permitting an expert to describe the

ordinary occurrence of intoxication in such orphic terms creates the danger of misleading the

jury." *United States v. Hillsberg*, 812 F.2d 328, 333 (7th Cir. 1987).  This Court finds that Dr.

Milzoff's proffered expert testimony regarding whether Mr. Miller appeared to be incapacitated

based on video recordings of the events surrounding his arrest is not relevant and would not be

helpful to a jury.  Indeed, expert testimony as to this determination within the realm of the lay

juror presents a substantial danger of misleading the jury.  Thus, this testimony is not admissible.

### Reliability

*Daubert* also requires this Court to "ensure that any and all scientific testimony or

evidence admitted is not only relevant, but reliable."  509 U.S. at 589.  "And where such

testimony's factual basis, data, principles, methods, or their application are called sufficiently

into question, [], the trial judge must determine whether the testimony has 'a reliable basis in the

knowledge and experience of [the relevant] discipline.'"  *Kumho*, 526 U.S. at 149 (quoting

*Daubert*, 509 U.S. at 592).  "In deciding whether a step in an expert's analysis is unreliable, the

district court should undertake a rigorous examination of the facts on which the expert relies, the

method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). At minimum, "[a]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006), *aff'd on other grounds*, 552 U.S. 312 (2008). Finally, this Court has "considerable leeway in deciding" how it will go about determining the reliability of proffered expert testimony. *Kumho*, 56 U.S. at 152.

Dr. Milzoff reached his opinions based on the case materials he received, which are listed in his report. Report of Dr. Milzoff, Pl. Ex. B, at 1-2. These include, *inter alia*, police reports, medical records, deposition transcripts, and video recordings. Dr. Milzoff's report, however, contained very little explanation of the techniques or methodologies that he used to form his opinions.

Dr. Milzoff opined that Mr. Miller "did not demonstrate the clinical signs associated with BACs greater than 0.25 gram percent." Report of Dr. Milzoff, Pl. Ex. B, at 5. He calculated two estimated ranges of Mr. Miller's BAC by extrapolating back nine hours from the time his serum alcohol concentration was measured at the hospital, using the rate at which "[m]ost individuals clear (excrete and metabolize) alcohol" from their bodies. Report of Dr. Milzoff, Pl. Ex. B, at 3. The first estimate was based on the assumption that "Mr. Miller had absorbed all the alcohol he had consumed prior to arriving at SCADD," and the second was based on the assumption that he "had not absorbed all the alcohol he had consumed prior to arriving at SCADD." *Id.* Dr. Milzoff did not indicate that he controlled for any of Mr. Miller's individual characteristics that might cause him to clear alcohol at a different rate than "[m]ost individuals." *Id.*

The Supreme Court has held that "reliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between [an expert's] methodology and the expert's

conclusions." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005); *see also In re Zyprexa Prods. Liab. Litig.*, 489 F.Supp.2d 230, 284 (E.D.N.Y. 2007) ("Unfounded extrapolations not supported by, or sufficiently related to, scientific data or expertise should be rejected; opinion that 'is connected to existing data only by the *ipse dixit* of the expert' need not be admitted.  Expert opinion based on insufficient facts or data, or on unsupported suppositions is not acceptable.") (quoting *Joiner*, 522 U.S. at 146 (1997)) (internal citations omitted).  No such rigorous analytical connection has been established with respect to Dr. Milzoff's BAC estimates.  Dr. Milzoff's testimony regarding his estimates of Mr. Miller's BAC shall therefore be excluded because this "rigorous analytical connection" has not been made.

Dr. Milzoff further opined that Mr. Miller's reported consumption of alcohol "could have resulted in the altercation" between Mr. Miller and the police.  Report of Dr. Milzoff, Pl. Ex. B, at 5.  However, Dr. Milzoff offered no explanation of any techniques or methodologies by which he reached this conclusion.  Dr. Milzoff seemed to assert by implication that the general effects of alcohol, which are described earlier in his report (Report of Dr. Milzoff, Pl. Ex. B, at 4), are consistent with the behavior Mr. Miller exhibited during his arrest and thus could be considered a cause of the events leading up to the arrest.  Dr. Milzoff's assertion here is the epitome of "mere *ipse dixit*."  *See Joiner*, 522 U.S. at 146.  In addition, it is so conclusory as to be unhelpful to the trier of fact.  *See* discussion *supra*; *see also Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("An expert's conclusory opinions are . . . inappropriate."); *cf. In re Longtop Fin. Technologies Ltd. Sec. Litig.*, No. 11-CV-3658, 2014 WL 2998524 (S.D.N.Y. July 3, 2014) ("an expert may not offer testimony that simply . . . constructs a factual narrative based on record evidence") (internal quotation marks and footnotes omitted).  Dr. Milzoff's testimony on this point is therefore excluded.

7

Dr. Milzoff also opined that the hypothetical consumption of Klonopin, along with the documented consumption of alcohol, "could have played a significant role in the behavior of Mr. Miller."  Report of Dr. Milzoff, Pl. Ex. B, at 5.  This assertion lacks a proper factual foundation. The premise that Mr. Miller may have taken Klonopin two days before his arrest, simply because he had a prescription for it, is pure speculation on Dr. Milzoff's part.  Expert opinions that have no basis in fact must be found inadmissible.  *See Salvino*, 542 F.3d at 311 (2d Cir. 2008) ("'expert testimony should be excluded if it is speculative or conjectural'" and "the '[a]dmission of expert testimony based on speculative assumptions is an abuse of discretion'") (alteration in original) (citations omitted); *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) (holding that expert's projections that were "without factual basis . . . should not have been admitted"); *E.E.O.C. v. Beauty Enterprises, Inc.*, 361 F. Supp. 2d 11, 17 (D. Conn. 2005) ("'district court abuses its discretion if it admits expert testimony that lacks an adequate factual basis'") (quoting *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 420 (3d Cir.2002)); *Macaluso v. Herman Miller, Inc.*, No. 01-cv-11496, 2005 WL 563169, at *8 (S.D.N.Y. Mar. 10, 2005) (expert's analysis fails to meet *Daubert* reliability standard "because it is based on incorrect factual assumptions that render all of his subsequent conclusions purely speculative"); *cf. Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007) ("expert opinions may properly be excluded when based on conjecture rather than evidence in the record").

### Admissible Testimony

A prerequisite for finding expert testimony to be admissible is a determination that the proffered witness be "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  To assist trial courts in performing their Rule 702 gatekeeping function, the Supreme Court has suggested a number of nonexclusive factors for consideration

after the witness's expert qualifications related to the proffered testimony have been established, including whether the underlying theory has been subjected to peer review and publication and whether it is generally accepted in the relevant scientific community.  *Daubert*, 509 U.S. at 593-94.

Dr. Milzoff opined on the general effects of very high BAC levels in individuals.  Report of Dr. Milzoff, Pl. Ex. B, at 4.  Dr. Milzoff has a doctoral degree in toxicology, and over 40 years of professional experience in toxicology.  He cited in support of his analysis of the general effects of high BAC levels to a published work on the subject.  As discussed *supra*, the intoxication of an arrestee has frequently been found relevant by various federal courts in excessive force claims.  As a result, the Court is satisfied that Dr. Milzoff's testimony with respect to the general effects of high BAC levels is admissible.

## Conclusion

For the foregoing reasons, Plaintiff's Motion *in Limine* seeking to exclude Dr. Milzoff's proffered expert testimony is **GRANTED** with respect to the following opinions: (1) that Mr. Miller did not demonstrate the clinical signs associated with BACs greater than 0.25 gram percent and did not appear incapacitated; (2) that Mr. Miller's consumption of alcohol could have resulted in the altercation that resulted in Mr. Miller's arrest; and (3) that the consumption of Klonopin, along with the documented consumption of alcohol, could have played a significant role in the behavior of Mr. Miller.  Plaintiff's Motion *in Limine* is **DENIED** with respect to Dr. Milzoff's proffered testimony concerning the general effects of high BAC levels.

**SO ORDERED** this 8th day of May, 2015, at Bridgeport, Connecticut.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE